IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

AIDA N. ORTIZ,                                )        CASE NO. 1:14CV2845
                                             )
                    Plaintiff,               )
                                             )
          v.                                 )
                                             )        MAGISTRATE JUDGE
                                             )        KATHLEEN B. BURKE
COMMISSIONER OF SOCIAL                        )
SECURITY ADMINISTRATION,                      )
                                             )        **MEMORANDUM OPINION & ORDER**
                    Defendant.               )


         Plaintiff Aida N. Ortiz ("Ortiz") seeks judicial review of the final decision of Defendant

Commissioner of Social Security ("Commissioner") denying her application for Supplemental

Security Income ("SSI").  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g).

This case is before the undersigned Magistrate Judge pursuant to the consent of the parties.  Doc.

13.

         For the reasons stated below, the Commissioner's decision is **AFFIRMED**.


## I. Procedural History

         Ortiz filed an application for SSI on July 15, 2011, alleging a disability onset date of

April 23, 2011.  Tr. 17, 227.  She alleged disability based on the following: deep vein

thrombosis; pulmonary embolism; diabetes; carpal tunnel syndrome; and rheumatoid arthritis.

Tr. 318.  After denials by the state agency initially (Tr. 142) and on reconsideration (Tr. 150),

Ortiz requested an administrative hearing.  Tr. 106.  A hearing was held before Administrative

Law Judge ("ALJ") Peter Bronson on February 20, 2013.  Tr. 37-68.  At the hearing, Ortiz

amended her disability onset date to July 15, 2011.  Tr. 41.  In his July 5, 2013, decision (Tr. 17-

29), the ALJ determined that there are jobs that exist in significant numbers in the national economy that Oritz can perform, i.e., she is not disabled.  Tr. 27.  Ortiz requested review of the ALJ's decision by the Appeals Council (Tr. 10) and, on October 28, 2014, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

## II. Evidence

### A.  Personal and Vocational Evidence

Ortiz was born in 1971 and was 39 years old on the date her application was filed.  Tr. 227.  She graduated from high school in 1990.  Tr. 42.  She previously performed part-time work at K-Mart.  Tr. 42-43.  She began working there in 2012 and was still working there at the time of her hearing.  Tr. 42.  She never worked prior to 2012.  Tr. 43.  Although she is not fluent in English, she can speak, understand, and read some English.  Tr. 24, 43.

### B.  Relevant Medical Evidence[1]

 On December 22, 2011, Ortiz visited the Geneva Clinic "to re-establish."  Tr. 373.  She presented with no complaints.  Tr. 373.  Upon physical examination, she had a normal musculoskeletal examination and normal extremities with a normal pulse and reflexes.  Tr. 373.  Upon neurological examination she had mild diabetic neuropathy in her lower extremities.  Tr. 373.  Under the "assessment and plan" portion of the record, the treatment note reads, "Diabetes uncontrolled.  Discussed with patient diet control and compliance with medication."

On August 6, 2012, Ortiz returned to the Clinic complaining of lower extremity numbness.  Tr. 419.  Her physical examination findings were the same as her previous visit.  Tr.

---

[1]  Ortiz only challenges the ALJ's decision with respect to his treatment of a consultative examiner's opinion that, based on Ortiz's diabetes, Ortiz could never operate foot controls and could not tolerate exposure to humidity, wetness, extreme cold, and extreme heat.  *See* Doc. 15, p. 12.  Accordingly, only the medical evidence relating to that argument is summarized herein.

419.  Due to complained-of side effects of her diabetes medication, she was prescribed Lantus. Tr. 419.

On December 13, 2012, Ortiz had no complaints of numbness in her lower extremities and examination results did not indicate neuropathy in her lower extremities.  Tr. 416.  The treatment note reads that Ortiz's diabetes was controlled, she was to continue her current medication, and she was counseled about a low carb diet.  Tr. 416.  On January 10, 2013, Ortiz had no complaints and no findings were made regarding neuropathy in her lower extremities.  Tr. 415.

### C.  Medical Opinion Evidence—Consultative Examiner Dr. Bradford[2]

On March 8, 2013, Ortiz saw Dorothy A. Bradford, M.D., for a consultative examination. Tr. 718-731.  The exam occurred at the behest of the ALJ, who explained at the hearing, "there was never any State consultative exam done in this case … [a]nd one of the things the State consultative examiner would have done would have been to measure grip strength."  Tr. 65. Upon examination, Ortiz's left, non-dominant hand grasp was 4/5; her remaining functions (manipulation, pinch, fine coordination) were all normal.  Tr. 718.  Dr. Bradford noted, "she has lost [sic] of pinprick in both feet."  Tr. 725.   She opined that Ortiz has "diabetic neuropathy in both feet and should be limited to sedentary activity."  Tr. 725.  She also stated that, due to neuropathy, Ortiz could never use foot controls.  Tr. 728.  Dr. Bradford opined that Ortiz could not perform work involving exposure to unprotected heights, moving mechanical parts, or operating a motor vehicle. Tr. 730.  She could occasionally experience humidity and wetness, extreme cold, and extreme heat, and frequently be exposed to dusts, similar respiratory irritants,

---

[2]  For the reasons stated in footnote 1, *supra*, the Court only summarizes the medical opinion relevant to Ortiz's challenge to the ALJ's decision.

and vibration.  Tr. 730.  She could occasionally handle, finger, and feel with both hands and frequently reach, push and pull with her right hand.  Tr. 728.

### D.  Testimonial Evidence

#### 1.  Ortiz's Testimony

Ortiz was represented by counsel and testified at the administrative hearing; she was also assisted by an interpreter.  Tr. 41-53, 59-63.  She testified that she is prevented from working full time because of problems she has with her hands, standing for long periods of time, walking "a lot," being a diabetic, and having to take pills that put her to sleep.  Tr. 44.  She is unable to lift and carry a five pound bag of sugar or a gallon of milk and cannot open jars.  Tr. 44.  She can walk five minutes before having to sit down; stand for 30 minutes before having to sit down; has no trouble sitting; can walk up and down steps carefully; and cannot hold things with her hands.  Tr. 45.  She cannot kneel or bend forward at waist level but can crawl.  Tr. 45.

Currently, her job at K-Mart involves a good deal of walking and standing.  Tr. 60.  She works four days a week and never two days in a row.  Tr. 61.  On her days off she rests at home.  Tr. 61.  When asked why she would be unable to perform a "sitting" job, Ortiz explained that she feels a burning sensation in her fingers and hands and that, when sitting down for long periods of time, she feels pain in her legs.  Tr. 62.  She drops heavy things frequently and also "small objects" like her purse and plastic bags; she is unable to grip.  Tr. 62.  The tingling sensation and constant pain in her right hand improved after her carpal tunnel surgery, "[b]ut every time I submerge my hand into some hot water, or I use them to do something, the pain immediately comes back and I have to massage my hands."  Tr. 62-63.

#### 2.  Medical Expert's Testimony

Medical Expert Dr. Alan Kravitz ("ME"), a board certified internist, testified at the hearing.  Tr. 47-52.  The ME stated that, in his opinion, Ortiz had one severe impairment—diabetes with neuropathy.  Tr. 48.  He explained that he ruled out carpal tunnel syndrome because it had been resolved, and that he did not find Ortiz's plantar fasciitis or her knee problems to be severe.  Tr. 48.  He opined that Ortiz did not have an impairment by itself or in combination with others that meets or medically equals a listed impairment.  Tr. 49.  He believed that Ortiz could perform a full range of sedentary work.  Tr. 49.  When asked why Ortiz would be limited to sedentary work based on diabetes with neuropathy alone, the ME replied that the neuropathy affects her walking, her hands, and her stomach.  Tr. 49.  He did not believe that she required any restrictions with respect to grasping, handling, or gross or fine manipulation.  Tr. 49-50.

Ortiz's attorney asked the ME why he did not believe Ortiz had restrictions on her manipulative abilities if, as he found, her neuropathy affects her hands.  Tr. 50.  The ME replied that, based on the record, the neuropathy affects her upper extremities and her lower extremities but nothing indicates that it affects her manipulative abilities at all.  Tr. 50.  Ortiz's attorney clarified that "hands" are considered "upper extremities" and the ME confirmed this was so.  Tr. 50.  Ortiz's attorney asked what typical diabetes-based neuropathy symptoms would manifest in the hands.  Tr. 50.  The ME answered that there are both sensory and motor symptoms but that there is nothing in the record specifically with respect to Ortiz's fingers.  Tr. 50.

Ortiz's attorney asked the ME if, based on his experience, people who have carpal tunnel syndrome often have ongoing pain despite surgery.  Tr. 50.  The ME replied that they do not, explaining, "It's really when the surgery is performed and there's a successful result, there's no subsequent pain."  Tr. 50-52.  Ortiz's attorney asked the ME if he was aware of what pain

medications Ortiz was taking and the ME stated that he was.  Tr. 51.  Ortiz's attorney asked if

those medications are associated with fatigue, sleepiness, and lack of concentration.  Tr. 51.  The

ME responded that they might be but that there was no evidence of these symptoms in Ortiz's

record.  Tr. 51.  The attorney asked the ME whether Ortiz had any vision issues and the ME

answered that none was indicated in the record.  Tr. 51.  Finally, the attorney asked the ME why

he believed that Ortiz's inflammatory arthritis and carpal tunnel were not severe impairments.

Tr. 51.  The ME reiterated that Ortiz's carpal tunnel had been surgically resolved and that her

inflammatory arthritis was not a major impairment based on the way it is described in the record.

Tr. 51-52.

### 3.  Vocational Expert's Testimony

 Vocational Expert Ted Macy ("VE") testified at the hearing.  Tr. 53-65.  The ALJ and

the VE agreed that Ortiz had no past relevant work.  Tr. 54.  The ALJ asked the VE to determine

whether a hypothetical individual of Ortiz's age and education could perform work if the

individual had the following characteristics: can perform work at the sedentary level "with all

that implies with respect to exertional and postural limitations, and see 20 CFR 416.967, for

further details about what those are"; can stand and/or walk up to and no more than a total of 30

minutes at a time; can occasionally bend, stoop, crouch, squat and crawl; cannot kneel; can

occasionally climb steps and ramps; cannot climb ladders, ropes or scaffolds; cannot work in

proximity to unprotected heights, dangerous moving machinery or other workplace hazards;

cannot operate a motor vehicle as part of the job; and can speak, understand, and read Spanish

fluently and can speak, understand and read English some.  Tr. 55.  The VE answered that such

an individual could perform work as a table worker (400 northeast Ohio jobs; 54,000 national

jobs), bench hand (650 northeast Ohio jobs; 95,000 national jobs), and final assembler (600 Ohio jobs; 90,000 national jobs).  Tr. 56-57.

Next, Ortiz's attorney asked the VE if the same hypothetical individual could perform those jobs if the individual was limited to frequently performing gross handling and fingering. Tr. 57.  The VE replied that such an individual could not perform work as a bench hand but could still perform the other two jobs.  Tr. 58.  Ortiz's attorney asked whether the VE's answer would change if such an individual were limited to occasional handling and fingering.  Tr. 58. The VE stated that such a limitation would eliminate the jobs previously mentioned and added that there would be very few jobs available.  Tr. 58.  The VE explained that there would only be five to eight jobs in northeast Ohio, that the jobs would have to provide an accommodation, and that it would be very unusual.  Tr. 58.

Ortiz's attorney next asked the VE if the individual described in the ALJ's hypothetical could perform the jobs previously identified if the individual would be absent from work three times a month on average.  Tr. 58.  The VE answered that there would be no jobs for such an individual.  Tr. 59.  Ortiz's attorney asked whether the hypothetical individual could perform work if, instead of absences, the individual would need to take extra 15-minute breaks every two hours.  Tr. 59.  The VE replied that there would be no work for such an individual.  Tr. 59.

Finally, Ortiz's attorney asked the VE to consider the ALJ's original hypothetical individual and to describe what affect the following additional limitation would have on the individual's ability to perform the jobs previously mentioned: the individual can occasionally handle and finger with the left upper extremity.  Tr. 64.  The VE stated that such an individual would have to do more work with the right hand and that it may not be feasible to do so in the jobs previously mentioned, particularly the bench hand job.  Tr. 64.  The VE added that some

other jobs might remain, but that if one hand was limited to frequent and the other hand limited to occasional, there would be no jobs such an individual could perform.  Tr. 64.

### III. Standard for Disability

Under the Act, 42 U.S.C. § 423(a), eligibility for benefit payments depends on the existence of a disability.  "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

 In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations.  The five steps can be summarized as follows:

1.      If the claimant is doing substantial gainful activity, he is not disabled.

2.      If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3.      If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4.      If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work.  If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5.   If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920;[3] *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987).

Under this sequential analysis, the claimant has the burden of proof at Steps One through Four.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  The burden shifts to the

Commissioner at Step Five to establish whether the claimant has the vocational factors to

perform work available in the national economy.  *Id.*

## IV. The ALJ's Decision

In his July 5, 2013, decision, the ALJ made the following findings:

1.   Ms. Ortiz has not engaged in substantial gainful activity since July 15, 2011, the amended alleged onset date.  Tr. 20.

2.   From July 15, 2011, the amended alleged onset date, through the date of this decision, Ms. Ortiz had and has the following severe impairments: tricompartmental osteoarthritic changes of both knees, with the greatest changes involving joint space narrowing at the medial femoral tibial joint spaces bilaterally; bilateral plantar fasciitis; equinus deformity of the foot; diabetic neuropathy secondary to diabetes; and obesity.

For at least some period(s) of time from July 15, 2011, the amended alleged onset date, through the date of this decision, Ms. Ortiz had and has the following impairments which were not and are not "severe impairment[s]": carpal tunnel syndrome and adjustment disorder with mixed anxiety and depressed mood.  Tr. 20-21.

3.   From July 15, 2011, the amended alleged onset date, through the date of this decision, Ms. Ortiz did not and does not have an impairment or combination of impairments that met, meets, medically equaled, or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 21.

---

[3] The DIB and SSI regulations cited herein are generally identical.  Accordingly, for convenience, further citations to the DIB and SSI regulations regarding disability determinations will be made to the DIB regulations found at 20 C.F.R. § 404.1501 et seq.  The analogous SSI regulations are found at 20 C.F.R. § 416.901 et seq., corresponding to the last two digits of the DIB cite (i.e., 20 C.F.R. § 404.1520 corresponds to 20 C.F.R. § 416.920).

4.      From July 15, 2011, the amended alleged onset date, through the date of this decision, Ms. Ortiz had and has the residual functional capacity to perform work activities except for the following limits on her ability to work: Ms. Ortiz could and can do work at the sedentary exertional level only, with all that implies with respect to exertional and postural limitations (see 20 CFR 416.967 for further details about what those are)[], subject to the following additional limitations.  Ms. Ortiz could and can stand and/or walk up to and no more than a total, in the aggregate, of 30 minutes at a time without taking a break from those activities.  This does not necessarily mean that Ms. Ortiz must take a break from working while thus taking a break from standing and/or walking.  Ms. Ortiz could and can bend, stoop, crouch, squat, and crawl up to and no more than occasionally.  Ms. Ortiz could not and cannot kneel.  Ms. Ortiz could and can climb steps and ramps up to and no more than occasionally.  Ms. Ortiz could not and cannot climb ladders, ropes, or scaffolds.  Ms. Ortiz could not and cannot work in proximity to unprotected heights, dangerous moving machinery, or other workplace hazards.  Ms. Ortiz could not and cannot operate a motor vehicle as part of a job.  Ms. Ortiz could and can speak, understand, and read Spanish fluently but could not and cannot speak, understand, or read English fluently (she can speak, understand, and read English some, but not fluently).  Tr. 23-24.

5.      Ms. Ortiz has no past relevant work.  Tr. 26.

6.      Ms. Ortiz was born on December 10, 1971.  At all times from July 15, 2011, the amended alleged onset date, through the date of this decision, Ms. Ortiz was and is a younger individual age 18-44.  Tr. 26.

7.      Ms. Ortiz is a high school graduate.  She is literate and able to communicate in English.  Tr. 27.

8.      Transferability of job skills is not an issue because Ms. Ortiz does not have past relevant work.  Tr. 27.

9.      From July 15, 2011, the amended alleged onset date, through the date of this decision, considering Ms. Ortiz's age, education, work experience, and residual functional capacity, there were and are jobs that existed and exits in significant numbers in the regional and national economy that Ms. Ortiz could and can perform.  Tr. 27.

10.     Ms. Ortiz was not and is not under a disability, as defined in the Social Security Act, from July 15, 2011, the amended alleged onset date, through the date of this decision.  Tr. 29.

## V. Parties' Arguments

Ortiz objects to the ALJ's decision on one ground—the ALJ's assessment of her residual functional capacity ("RFC") is not supported by substantial evidence because the ALJ did not explain why limitations expressed in consultative examiner Dr. Bradford's opinion were excluded from his RFC assessment.   Doc. 15, pp. 11-12.  In response, the Commissioner submits that the ALJ did not err because the limitations expressed in Dr. Bradford's opinion regarding foot controls were included in the RFC and the ALJ was not required to address environmental factors when none of the jobs identified by the VE involved those factors.  Doc. 17, pp. 6-9.

## VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003).  "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992) (quoting *Brainard v. Sec'y of Health and Human Servs.,* 889 F.2d 679, 681 (6th Cir. 1989) (per curiam) (citations omitted)).  A court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility."  *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

Ortiz argues, "Although the ALJ credited [Dr. Bradford's] opinion, [he] did not explain why these limitations [regarding Ortiz never operating foot controls] were excluded from her [RFC]."  Doc. 15, p. 12.  The Commissioner contends that the ALJ included this limitation in his

RFC assessment because he limited Ortiz to sedentary work, which does not require the ability to operate foot controls.  Tr. 17, p. 7.

20 C.F.R. § 416.967 provides,

(a) Sedentary work. Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(b) Light work. Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, *or* when it involves sitting most of the time *with some pushing and pulling* of arm *or leg controls*. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(a)&(b)(emphasis added).

A plain reading of these regulations supports the Commissioner's assertion that sedentary work does not involve the use of foot controls.  Indeed, the regulations make clear that work performed sitting down with some pushing and pulling of foot controls is light work.  *Id*.  Thus, the ALJ's RFC assessment limiting Ortiz to sedentary work included, by its definition, a limitation that the individual not be required to use foot controls.  *See also Hayes v. Sec'y of Health & Human Servs*., 945 F.2d 404, at *3 (6th Cir. Sept. 30, 1991) (unpublished) ("the definition of sedentary work does not require operation of foot controls. 20 C.F.R. § 404.1567(a): *compare with* 20 C.F.R. § 404.1567(b) (definition of 'light work' lists operation of foot controls as an element)"); *Whitaker v. Astrue*, 2011 WL 345833, at *8 (E.D. Tenn. Jan. 3, 2011) (ALJ found claimant could perform sedentary jobs; "[c]ommon sense would indicate that none of [the jobs] would be precluded by an inability ... to operate a foot control with the left

foot," *report and recommendation adopted*, 2011 WL 345925, at *1 ("A finding of sedentary

work [] is consistent with the physician's opinions [providing a limitation in the ability to push

and pull by the lower extremity], and these limitations are necessarily included in the definition

of sedentary work."); *Harbour v. Astrue*, 2008 WL 2222269, at *11 (W.D. Va. May 27, 2008)

("it is clear that sedentary work does not require the pushing and pulling of leg-foot controls and,

therefore, the ALJ's failure to specifically list such a limitation in his formal residual functional

capacity finding is, again, nothing more than harmless error."); *see also* Social Security Ruling

83-10, Program Policy Statement, 1983 WL 31251, at *5;[4] SSR 96-9p, 1996 WL 374185, at *6

(listing the exertional and postural limitations and restrictions for sedentary work:

lifting/carrying and pushing/pulling, standing/walking, sitting, alternate sitting and standing, and

manipulative limitations involving the hands and fingers).[5]  This is especially the case when, as

here, the ALJ specifically referenced the definition of sedentary work in his RFC assessment and

in his hypothetical question to the VE.  Tr. 23 (decision citing 20 C.F.R. § 416.967(a)&(b) and

---

[4] SSR 83-10 defines sedentary work as:

> involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met. By its very nature, work performed primarily in a seated position entails no significant stooping. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.

1983 WL 31251, at *5.  Light work is defined as:

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted in a particular light job may be very little, a job is in this category when it requires a good deal of walking or standing--the primary difference between sedentary and most light jobs. A job is also in this category when it involves sitting most of the time but with some pushing and pulling of arm-hand or leg-foot controls, which require greater exertion than in sedentary work; e.g., mattress sewing machine operator, motor-grader operator, and road-roller operator (skilled and semiskilled jobs in these particular instances). Relatively few unskilled light jobs are performed in a seated position.

*Id.*

[5] SSR 96-9p also contemplates the use of a medically required hand-held assistive device when standing or walking while performing a sedentary job when the individual has an impairment of one or both lower extremities.  1996 WL 374185, at *7.

including the complete definition of sedentary and light work in a footnote); Tr. 54-55 ("our hypothetical person could and can do work at the sedentary exertional level only with all that implies with respect to exertional and postural limitations, and see 20 C.F.R. § 416.967, for further details about what those are[.]").

Ortiz also argues that the ALJ erred because he did not include a limitation or explain why he did not include a limitation based on Dr. Bradford's opinion that Ortiz should avoid exposure to humidity.  Doc. 15, p. 12.  "In general, few occupations in the unskilled sedentary occupational base require work in environments with extreme cold, extreme heat, wetness, humidity, vibration, or unusual hazards.  The 'hazards' defined in the [Selected Characteristics of Occupations] are considered unusual in unskilled sedentary work."  SSR 96-9p, 1996 WL 374185, at *9.  The jobs identified by the VE here—table worker, bench hand, and final assembler—are no exception.  *See* Doc. 17-1, p. 12 (Dictionary of Occupational Titles ("DOT") for table worker, "Wet and/or Humid: Not Present—activity or condition does not exist"), 1991 WL 680217; Doc. 17-1, p. 8 (DOT for bench hand (same)), 1991 WL 679344; Doc. 17-1, p. 4 (DOT for final assembler (same)), 1991 WL 679271.[6]

In sum, by limiting Ortiz to sedentary work, the ALJ's RFC included restrictions involving the use of foot controls and exposure to environmental factors such as humidity; moreover, the VE identified jobs that did not require work outside those restrictions.  Ortiz's arguments to the contrary are without merit and the ALJ's decision must be affirmed. *See Wright*, 321 F.3d at 614.

---

[6]  Additionally, none of these jobs include the ability to use foot controls.

## VII. Conclusion

For the reasons set forth herein, the Commissioner's decision is **AFFIRMED.**

Dated: November 2, 2015

Kathleen B. Burke
United States Magistrate Judge